UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 24-09** |
| **XAVION WATTS** | **SECTION I** |

### ORDER AND REASONS

Before the Court are defendant Xavion Watts's ("Watts") objections[1] to the presentence reports ("PSR"). The government filed responses[2] in opposition.

As explained below, the Court sustains Watts's objection to the two-level enhancement for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2. Watts's objection regarding the use of his juvenile offenses to calculate his criminal history score and the manner in which that score was calculated is overruled. Lastly, Watts's objections to the factors that may warrant an upward departure pursuant to U.S.S.G. § 4A1.3(a)(1) is granted in part and denied in part.

### I. BACKGROUND

On July 17, 2024, Watts pleaded guilty to count one of the indictment,[3] which charged him with possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). The U.S. Probation Office ("probation") filed a draft presentence report.[4] Watts filed an objection to the draft PSR's inclusion of a two-level enhancement for

---

[1] R. Doc. No. 47; R. Doc. No. 69.
[2] R. Doc. No. 49; R. Doc. No. 74.
[3] R. Doc. No. 3.
[4] R. Doc. No. 44.

reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2.[5] The government opposes the objection.[6] Probation filed the final PSR,[7] which included an addendum in response to Watts's objection but retained the objected-to enhancement.

Probation later received previously unavailable records regarding Watts's juvenile offenses[8] and filed a revised final PSR[9] reflecting those records. The revised final PSR likewise retains the objected-to enhancement.[10] Watts filed additional objections[11] to the revised final PSR based on the use of his juvenile records to calculate his criminal history score and the manner in which the revised final PSR calculates criminal history points for those offenses. Watts additionally objects to the inclusion of factors that may warrant an upward departure pursuant to U.S.S.G. § 4A1.3(a)(1).[12] The government filed a response[13] in opposition to these objections. Probation filed an addendum[14] to the revised final PSR responding to Watts's objections, but making no substantive changes related to Watts's objections.

The revised final PSR states that Watts's total offense level is 17 with a criminal history category of VI.[15] The revised final PSR therefore calculates that

---

[5] R. Doc. No. 47.
[6] R. Doc. No. 49.
[7] R. Doc. No. 51.
[8] *See* R. Doc. No. 57.
[9] R. Doc. No. 60.
[10] *See id.* ¶¶ 9, 15.
[11] R. Doc. No. 69.
[12] *Id.* at 7–8.
[13] R. Doc. No. 74.
[14] R. Doc. No. 75.
[15] R. Doc. No. 60, ¶¶ 19, 37.

Watts's guideline range is 51 to 63 months.[16] Watts's objection regarding the two-level enhancement pursuant to U.S.S.G. § 3C1.2 is sustained because the government has failed to present evidence sufficient to demonstrate that Watts's actions created a substantial risk that death or bodily injury would occur. Watts's objection regarding the use of his juvenile records and the manner in which they were used to calculate his criminal history score is overruled. Watts's objection to the factors that may warrant an upward departure is sustained in part and overruled in part.

## II.  LAW AND ANALYSIS

### a. Objection to Offense Level Enhancement for Reckless Endangerment During Flight

The factual basis states that on October 29, 2022, in the 400 block of Bourbon Street, officers observed Watts with what appeared to be a firearm in his waistband covered by his shirt.[17] When an officer approached Watts, he fled on foot towards Saint Louis Street and was pursued by the officers.[18] Officers apprehended Watts, and a Glock 17, 9mm with a fully automatic switch installed fell from his waistband during the arrest.[19] The gun was loaded with one live round in the chamber and twenty-one live rounds in the extended magazine.[20]

The revised final PSR enhances Watts's offense level by two pursuant to U.S.S.G. § 3C1.2, saying that he "recklessly created a substantial risk of death or

---

[16] *Id.* ¶ 92.
[17] R. Doc. No. 40, at 1.
[18] *Id.*
[19] *Id.*
[20] *Id.* at 1–2.

serious bodily injury to another person in the course of fleeing from a law enforcement officer."[21] In support, the revised final PSR emphasizes that when Watts ran from the police, he "had a loaded firearm concealed near his waist area on a crowded, public street known for tourist activity."[22]

Watts objects to the enhancement, arguing that it does not apply because he "did not intentionally or recklessly wield the firearm in a dangerous manner during his flight from law enforcement, nor did he intentionally discard it."[23] Specifically, he argues that case precedent in various circuits of the U.S. Courts of Appeals establishes that armed flight alone is not sufficient to meet the enhancement.[24] Because the firearm was accidentally dropped, and there is no evidence that the firearm discharged or could have reasonably been expected to discharge because of the drop, Watts argues that his conduct was not reckless and that it did not create a substantial risk of death or injury.[25]

In response, the government argues that the enhancement is warranted because when Watts's firearm fell in a crowded tourist area, it created a drop-risk of accidental firing.[26] The government cites cases from other circuits, arguing that similar fact patterns have resulted in the U.S.S.G. § 3C1.2 enhancement.[27]

---

[21] R. Doc. No. 60, ¶ 15.
[22] *Id.*
[23] R. Doc. No. 47, at 1.
[24] *Id.* at 2–3.
[25] *Id.* at 3.
[26] R. Doc. No. 49, at 5.
[27] *Id.* at 2–5.

The U.S. Sentencing Guidelines ("the guidelines") provide that the defendant's offense level should be enhanced pursuant to U.S.S.G. §3C1.2 if "the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer . . . ." U.S.S.G. § 3C1.2. The guidelines define "reckless" as "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4 cmt. n.1. The guidelines do not define "substantial risk."

The Fifth Circuit has instructed in *United States v. Lackey* that, in applying U.S.S.G. § 3C1.2, "a substantial risk requires a *strong probability* that the event . . . will occur." 617 Fed. App'x 310, 314 (5th Cir. 2015) (unpublished) (alterations in original) (quoting *Rodriguez v. Holder*, 705 F.3d 207, 213 (5th Cir. 2013)). In other words, the defendant's reckless conduct while fleeing from law enforcement must create a strong probability that death or serious bodily injury to another person will occur. *See id.* at 314–15. However, the Fifth Circuit has also "not limited the application of the enhancement to situations resulting in actual harm or manifesting extremely dangerous conduct by a defendant." *United States v. Jimenez*, 323 F.3d 320, 323 (5th Cir. 2003).

The Court and the parties are unaware of cases with analogous fact patterns within the Fifth Circuit. The parties therefore cite out-of-circuit cases in support of their arguments.

Watts cites to *U.S. v. Mukes*, 980 F.3d 526 (6th Cir. 2020).[28] In *Mukes*, the Sixth Circuit reversed the district court's application of the § 3C1.2 enhancement to a defendant who ran from police and dropped his gun. *Id.* at 538. The *Mukes* court concluded that there was no indication in the record that the gun was cocked when it was tossed, and there was insufficient information to conclude that dropping the firearm presented a risk of the gun discharging. *Id.* Watts likewise cites *U.S. v. Brown*, 31 F.4th 39, 47 (1st Cir. 2022),[29] a case in which the First Circuit concluded that "something more" than fleeing police while armed was necessary to apply the enhancement. However, the court in that case concluded that a firearm falling to the ground "during a physical struggle with a police officer" was sufficient to meet that standard. *Id.* at 47–49.

The government cites other cases in which circuit courts have concluded that struggling with police officers while resisting arrest justified applying the enhancement.[30] Specifically, the government cites to *U.S. v. Matchett*, 802 F.3d 1185, 1197–98 (11th Cir. 2015),[31] where the Eleventh Circuit concluded that resisting arrest and wrestling with an officer for over three minutes with a loaded handgun in his pocket "recklessly created a substantial risk of death or serious bodily injury to another person." The Court noted that the officer could have unintentionally pulled the trigger during the struggle and the gun could have accidentally discharged when

---

[28] R. Doc. No. 47, at 2–3.
[29] *Id.* at 3.
[30] R. Doc. No. 49, at 3–5.
[31] *Id.* at 3–4.

it fell from his pocket. *Id.* The government likewise cites *U.S. v. Williams*, 278 F. App'x. 279, 280–81 (4th Cir. 2008) (unpublished),[32] in which the Fourth Circuit upheld the district court's application of the enhancement when a defendant struggled with officers while armed. Because there is no evidence that a physical altercation occurred during Watts's arrest, these cases are of limited value.

The most factually analogous case cited by the government is *United States v. Zamora*, 97 F.4th 1202 (10th Cir. 2024).[33] In *Zamora*, the Tenth Circuit upheld the § 3C1.2 enhancement where the defendant fled through a neighborhood with a Glock tucked into his waistband before accidentally shooting himself in the leg. *Id.* at 1204, 1210–11. At trial, two expert witnesses testified that it is unlikely, but possible, for a Glock to accidentally fire. According to the government's expert, "the Glock has three safety mechanisms that have to come into play for the firearm to fire," and Glock's website states that "the trigger has to be deliberately pressed for [the gun] to fire." *Id.* at 1206 (alterations in original) (internal quotations omitted). On cross examination, the government's expert testified that it is "possible" that a Glock could fire accidentally. *Id.* Defense counsel's expert testified that he had not seen a Glock fire when loose in clothing, but "he believed, if it caught on a belt or other clothing with enough force" that it could fire. *Id.* The district court applied the enhancement, stating that, while it was unsure how the gun discharged, it was "either the result of

---

[32] *Id.* at 5.
[33] *Id.* at 4–5.

the fact that it was not stored in a safe way or that [the defendant] reached for the gun." *Id.* at 1207.

While *Zamora* appears factually analogous, the Tenth Circuit upheld the district court's application of the enhancement based on expert testimony that accidental discharge was "possible" and "*could* happen." *See Zamora*, 97 F.4th at 1206. The court there made no finding that there was a strong probability of accidental discharge or that it was likely. The reasoning in *Zamora* is therefore insufficient to meet the standard laid out in *Lackey* and demonstrate that there was a "strong probability" of accidentally discharging a Glock during flight. *See United States v. Lackey*, 617 F. App'x 310, 314 (5th Cir. 2015) (unpublished).

"The Government bears the burden of proving by a preponderance of the relevant and reliable evidence that the facts support a sentencing enhancement." *United States v. Rodriguez*, 523 F.3d 519, 524 (5th Cir. 2008) (citation omitted). Here, the government has not presented evidence, expert or otherwise, sufficient to convince the Court that the Glock falling from Watts's waistband created a strong probability of a drop-fire. The government has likewise not presented evidence suggesting that the gun here fell because of a physical altercation with the officers involved or that any substantial risk of death or serious bodily injury existed. Accordingly, the Court sustains Watts's objection, and the U.S.S.G. § 3C1.2 enhancement will not apply. Watts's total offense level is 15.[34]

---

[34] *See* R. Doc. No. 60, ¶¶ 15–17 (concluding that Watts's total offense level would be 17 with the objected-to two-level enhancement).

**b. Objection to the Use of Juvenile Adjudications To Calculate Watts's Criminal History Score**

Watts next objects to the use of his juvenile offense records to calculate his criminal history score and the manner in which his score is calculated.[35] As a threshold matter, Watts argues that any use of juvenile records to calculate his criminal history score is inappropriate. As part of this argument, he first claims that § 4A1.2(d), which instructs courts how to assess criminal history points for offenses committed prior to age eighteen, "violates the original mandate and purpose of the United States Sentencing Commission while perpetuating arbitrary and inconsistent outcomes that only serve to exacerbate existing disparities in sentencing."[36] In particular, he argues that convictions in juvenile courts lack the reliability of convictions in criminal courts and that Louisiana law does not consider juvenile convictions to be prior convictions.[37] Secondly, Watts argues that there are constitutional concerns because it is inconsistent with the Supreme Court's recognition of the differences between adults and juveniles in the criminal context.[38]

However, as the government points out in its response,[39] the Fifth Circuit has made it clear that courts can consider juvenile convictions when calculating a defendant's criminal history score pursuant to the U.S. Sentencing Guidelines.

---

[35] R. Doc. No. 69, at 1–7.
[36] *Id.* at 4.
[37] *Id.* at 5–6.
[38] *Id.* at 6.
[39] R. Doc. No. 74, at 10.

*United States v. Kee*, 65 F. App'x 509, No. 02-60808, 2003 WL 1922977, at *1 (5th Cir. 2003) (unpublished).

Watts next objects to the manner in which his criminal history score is calculated.[40] The revised final PSR reflects 24 criminal history points based on Watts's juvenile offenses.[41] Pursuant to § 4A1.2(d) of the guidelines, Watts argues that his criminal history score was improperly calculated and that he should have received only 9 criminal history points.[42] The government argues that the revised final PSR accurately calculates 24 criminal history points for Watts.[43]

Section 4A1.2(d) instructs courts how to calculate offenses committed prior to age eighteen. "If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under § 4A1.1(a) for each such sentence." U.S.S.G. § 4A1.2(d)(1). For all other juvenile cases, courts are instructed to

> (A) add 2 points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense; (B) add 1 point under § 4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

U.S.S.G. § 4A1.2(d)(2). Within this same section of the guidelines, a "prior sentence" is defined as "any sentence previously imposed upon adjudication of guilt, whether

---

[40] R. Doc. No. 69, at 1.
[41] R. Doc. No. 60, ¶ 37.
[42] R. Doc. No. 69, at 1.
[43] R. Doc. No. 74, at 5.

by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1).

In the case of multiple prior sentences, courts must determine whether to count those sentences separately or treat multiple sentences as a single sentence. U.S.S.G. § 4A1.2(a)(2). "Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense)." *Id.* "If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." *Id.*

Watts states that he was sentenced for all of his offenses on only five occasions.[44] Yet, Watts argues that the revised final PSR incorrectly "assesses criminal history points for each individual offense for which Mr. Watts was sentenced on those five occasions, even when those offenses were charged on a single petition, adjudicated on the same day, and resulted in identical or concurrent sentences imposed by the same judge."[45] Watts contends that his criminal history score is improperly calculated because the intervening arrest rule does not apply to juvenile offenses.[46] He does not argue that there were not, in fact, intervening arrests or that his criminal history points were otherwise improperly calculated.

---

[44] R. Doc. No. 69, at 3.
[45] *Id.*
[46] *Id.* at 3–4.

Each of Watts's past offenses were scored pursuant to § 4A1.2(d)(2) as juvenile offenses. Yet Watts argues that the intervening arrest rule outlined in § 4A1.2(a)(2) only applies to adult convictions.[47] In particular, Watts points to differences in the use of the term "sentence of imprisonment" for adult convictions and "sentence to confinement" for juvenile offenses.[48] Watts likewise argues that § 4A1.2(d)(2) does not incorporate § 4A1.2(a)(2) by reference.[49] Accordingly, Watts maintains that the revised final PSR should not have assessed criminal history points for each individual offense and should not have applied the intervening arrest rule.[50] Alternatively, if the Court concludes that § 4A1.2(a)(2) does apply to juvenile offenses, Watts argues that the juvenile court effectively consolidated the offenses by relying on a single petition and imposing a single sentence on each of the five occasions.[51]

The government points to several cases in which U.S. Courts of Appeals have rejected the argument that § 4A1.2(a)(2) and the intervening arrest rule are inapplicable to juvenile adjudications.[52] Most recently, in *United States v. Jenkins*, the Seventh Circuit rejected an argument that, because sentences for two juvenile offenses were imposed on the same day, they were "effectively consolidated" and should be treated as a single sentence. 128 F.4th 885, 893 (7th Cir. 2025). The court

---

[47] *Id.*
[48] *Id.* at 2–3.
[49] *Id.* at 4.
[50] *Id.* at 3.
[51] *Id.* at 4.
[52] R. Doc No. 74, at 9.

there explicitly applied § 4A1.2(a)(2) and the intervening arrest rule to juvenile offenses. *Id.*

Because § 4A1.2(a)(2) refers to a "prior sentence" and does not limit itself to confinement or imprisonment, the Court fails to see how a distinction between these terms is material for purposes of the intervening arrest rule. Furthermore, Watts's argument that § 4A1.2(d)(2) would have incorporated § 4A1.2(a)(2) by reference if the intervening arrest rule were to be applied is especially dubious. The structure of § 4A1.2 reveals that the intervening arrest rule appears in a definition provision immediately preceding § 4A1.2(d)(2) within the same section of the guidelines. Indeed, although the Fifth Circuit has not addressed a direct challenge to the application of § 4A1.2(a)(2) and the intervening arrest rule to juvenile offenses, it has applied § 4A1.2(a)(2) to juvenile offenses. *See United States v. Bender*, 516 F. App'x 289, 294–95 (5th Cir. 2012) (applying § 4A1.2(a)(2) and the intervening arrest rule to juvenile offenses).

Accordingly, Watts's objection to the use of his juvenile records and the manner in which those offenses were used to calculate his criminal history score is overruled. Watts's criminal history category remains at VI.

### c. Objection to Factors that May Warrant an Upward Departure

Watts's last objection concerns the revised final PSR's inclusion of factors that may warrant an upward departure or variance.[53] Watts states that none of the factors listed in § 4A1.3(a)(1) that courts may consider when departing upwards are present

---

[53] R. Doc. No. 69, at 7.

in this case.[54] He additionally objects that the revised final PSR does not include factors that may make a downward departure appropriate pursuant to § 4A1.3(b)(1).[55] Lastly, he argues that the PSR ignores the fact that Watts's age at the time of his prior juvenile offenses may independently provide grounds for a downward departure.[56]

The government argues that many courts have held that considering juvenile offenses when determining whether to depart upwards is appropriate.[57] Additionally, the government argues that Watts's consistent criminal behavior provides ample reason the depart upwards in this case.[58]

"If reliable information indicates that the defendant's criminal history category substantially underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." U.S.S.G. § 4A1.3(a)(1). In determining whether to depart upwards, information that courts may consider includes, among other things, "[p]rior sentence(s) of substantially more than one year imposed as a result of independent

---

[54] *Id.* at 8.
[55] *Id.*
[56] *Id.* at 9–10. Watts separately filed a motion for a downward departure based on U.S.S.G. § 4A1.3(b) and § 5H1.1. *See* R. Doc. No. 72. The government filed a response opposing that motion. *See* R. Doc. No. 79. The Court addressed Watts's motion for a downward departure at the sentencing hearing. The Court acknowledged that it had the authority to depart downward pursuant to § 4A1.3(b) and § 5H1.1, but it declined to do so for reasons articulated at the hearing. The Court therefore declines to address, in this order and reasons, Watts's argument that the revised final PSR should have included factors warranting a downward departure.
[57] R. Doc. No. 74, at 11.
[58] *Id.* at 12.

14

crimes committed on different occasions" as well as "[w]hether the defendant was pending trial or sentencing on another charge at the time of the instant offense." Courts should not consider "[a] prior arrest record itself" for purposes of an upward departure. U.S.S.G. § 4A1.3(a)(3).

The revised final PSR points to certain factors that may form the basis of an upward departure, such as Watts's continued criminal conduct while he was in juvenile custody, his other charges pending at the time of the instant offense, his prior sentences of substantially more than one year imposed as a result of independent crimes committed on different occasions, his continued criminal activity after the instant offense, and his "ongoing pattern of escalating criminal activity."[59]

The Court concludes that Watts does not have any prior sentences of "substantially more than one year" pursuant to § 4A1.3(a)(2)(B) such that it is appropriate to consider the length of his past sentences as the basis for an upward departure. As Watts points out, none of his past juvenile offenses resulted in a sentence of more than two years.[60] Though the Court can find no Fifth Circuit cases addressing the meaning of "substantially more than one year," the Court is unaware of any cases concluding that a two-year sentence qualifies as such. Additionally, the Seventh Circuit has stated that "[a]lthough § 4A1.3(b) does not define 'substantially more,'" a five-year and three-year sentence each qualify as substantially more than one year, "even if [a] two-year sentence [does] not." *United States v. Lewis*, 954 F.2d

---

[59] R. Doc. No. 60, ¶ 102.
[60] R. Doc. No. 69, at 8; *see also* R. Doc. No. 60, at ¶¶ 7–21.

1386, 1397 (7th Cir. 1992). Watts's objection is sustained to the extent that the Court will not consider the length of his past sentences as a basis for an upward departure.

However, Watts's objection is overruled with respect to the other potential factors listed in the revised final PSR. Watts's charges that were pending at the time of the instant offense fall squarely into § 4A1.3(a)(2)(D) as a permissible factor for the Court to consider. Although the Court notes that, because these charges are still pending as of this date, the Court declined to consider these charges at sentencing. Additionally, while numerous considerations listed in the revised final PSR do not fall into one of the categories listed in § 4A1.3(a)(2), "[t]he factors listed in USSG § 4A1.3(a)(2) are nonexhaustive." *United States v. Masters*, 392 F. App'x 329, 333 (5th Cir. 2010). The Court may therefore consider the other facts listed in the revised final PSR as a basis for a potential upward departure, such as Watts's "ongoing pattern of escalating criminal activity."[61]

### III.   CONCLUSION

For the foregoing reasons, Watts's total offense level is 15 and his criminal history category is VI. Watts's guideline range is therefore 41–51 months. Accordingly,

**IT IS ORDERED** that Watts's objection to a two-level enhancement for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2 is **SUSTAINED**.

---

[61] *See* R. Doc. No. 60, ¶ 102.

**IT IS FURTHER ORDERED** that Watts's objection to the use of his juvenile offenses to calculate his criminal history score and the manner in which his criminal history score was calculated is **OVERRULED**.

**IT IS FURTHER ORDERED** that Watts's objection regarding the factors in the revised final PSR that may warrant an upward departure is **SUSTAINED IN PART** and **OVERRULED IN PART**. Watts's objection is sustained to the extent that the Court will not consider the length of his past sentences as a basis for an upward departure pursuant to § 4A1.3(a)(2)(B). His objection is overruled in all other respects.

New Orleans, Louisiana, March 12, 2025.

                                            **LANCE M. AFRICK**
                                  **UNITED STATES DISTRICT JUDGE**